Roy J. Smiley and Patricia Emanuel, Administrator of the Estate of Byron E. Emanuel, Deceased, Plaintiffs-Appellants, v. Estate of Charles Toney, Deceased, and Country Mutual Insurance Company, Defendants-Appellees.

Gen. No. 68–24.

Second District.

October 15, 1968.

271

Reese, Schlueter & Ecklund, of Rockford, for appellants.

Maynard, Maynard & Brassfield, of Rockford, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The question presented by this appeal is whether the insurance policy issued to Byron E. Emanuel by the defendant, Country Mutual Insurance Company (Country Mutual), provided uninsured vehicle coverage under which the plaintiffs may recover even though the alleged tort-feasor, Charles Toney, (now deceased), carried a valid policy of liability insurance within the meaning of the Illinois Financial Responsibility Law (Ill Rev Stats 1967, c 95½, pars 7–101 to 7–503 incl.).

The plaintiffs filed a three-count complaint against the defendants. In Count I, the plaintiff, Roy J. Smiley, sought to recover damages against the defendant, Robert C. Bourland, Jr., as administrator of the estate of Charles Toney, deceased, in the sum of $50,000; in Count II, the plaintiff, Patricia Emanuel, as administrator of the estate of Byron E. Emanuel, deceased, sought to recover damages in the same amount against the same defendant; in Count III, the plaintiffs sought a declaratory judgment, asked that the court construe the uninsured motorist clause of the insurance policy issued to Emanuel by Country Mutual, and declare that thereunder Country Mutual is liable to the plaintiffs for any judgment which either of them may recover against Robert C. Bourland, Jr., as administrator of the estate of Charles Toney, deceased, in excess of the policy limits of the insurance carried by said Toney.

The trial court dismissed Count III of the plaintiffs' complaint on motion of the defendant, Country Mutual, and the plaintiffs appealed.

Byron E. Emanuel, now deceased, and Roy J. Smiley, were involved in an automobile accident with Toney, who carried liability insurance with Manchester Insurance

Company with liability limits in the amount of $10,000 for each person and $20,000 for each accident. Emanuel carried liability insurance with Country Mutual, and the uninsured vehicle coverage thereunder was in the sum of $50,000 for each person and $100,000 for each accident.

The complaint alleged that Emanuel was driving his 1963 Ford and Smiley was a passenger therein at the time and place of the accident in question; that Toney then and there negligently drove his car over the center line of the highway and struck Smiley's car head-on; that Toney's negligent conduct was the proximate cause of the injuries arising out of such accident.

The uninsured vehicle clause of the Country Mutual policy provided:

"Section II—PROTECTION AGAINST BODILY IN-
JURY BY UNINSURED VEHICLES.

"Coverage U—Damages for Bodily Injury Caused by Uninsured Vehicles.

"To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an Uninsured Vehicle because of bodily injury, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such Uninsured Vehicle; provided, for the purposes of this coverage, determination as to whether the Insured or such representative is legally entitled to recover such damages, and if so the amount thereof shall be made by agreement between the Insured or such representative and the Company, or, if they fail to agree and the Insured or the Company so demands, by arbitration."

Under the same section, the Contract of Insurance also contains the following:

"DEFINITIONS: With Respect to this Section:
"UNINSURED VEHICLE MEANS:

"(1) a vehicle with respect to the ownership, maintenance or use of which *there is no bodily injury liability bond or bodily injury liability insurance policy applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such vehicle." (Emphasis ours.)

The plaintiffs contend that Toney was uninsured to a substantial part of the damages which they incurred, and that Country Mutual's uninsured vehicle clause should be construed to afford them coverage for the excess of any judgment which they may recover over and above the limits of Toney's insurance coverage.

They also assert that this uninsured vehicle coverage extends to damages in excess of the amount of "valid and collectible" insurance carried by Toney, under the underlined portion of the provisions of Country Mutual's other insurance clause, which reads:

". . . With respect to bodily injury to an Insured while occupying or through being struck by an Uninsured Vehicle, if such Insured is a Named Insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable, under this Section for a greater proportion of the applicable Limit of Liability of this Section than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance. Subject to the foregoing paragraphs, *if the Insured has other similar insurance available to him against a loss covered by this Section, the Company shall not be liable under this section for a greater proportion of such loss than the applicable limit of liability hereunder bears*

275

*to the total applicable limits of liability of all valid and collectible insurance against such loss."*

The plaintiffs also contend that section 143a of the Insurance Code (Ill Rev Stats 1967, c 73, par 755a) has application in the case at bar; that the term "uninsured motorist" as used in the statute and in the policy of Country Mutual, means one who is not insured in the amount of the total financial responsibility of the tort-feasor (Toney) to the injured parties. Specifically, they contend that in event the damages of either plaintiff exceed $10,000, then the uninsured motorist provisions of Country Mutual's policy would become available to each plaintiff respectively, up to $25,000. The plaintiffs concede that there is no precedent in Illinois for applying the term "uninsured motorist" to a tort-feasor who does have automobile liability insurance in the amounts required by the Illinois Financial Responsibility Law.

██ In addition to the absence of Illinois authority to support their contention, the plaintiffs face another impediment to its acceptance; namely, the statute in question was enacted after the effective date of the policy in question and after the date of the accident. It is settled law that all contracts are presumed to have been executed in the light of existing law. Schiro v. W. E. Gould & Co., 18 Ill2d 538, 544, 165 NE2d 286 (1960); Jinnette v. Guest, 35 Ill App2d 434, 440, 183 NE2d 194 (1962). Thus, the construction of Country Mutual's policy must be made in the light of section 143a as it existed in 1963—prior to the 1967 Amendatory Act.

The Country Mutual policy defined uninsured vehicles in the language heretofore set forth. Under the policy definition, if Toney was operating an insured vehicle at the time of the collision in question, then under the plain terms of the policy, there was no liability on the part of Country Mutual, unless section 143a of the Insurance

Code of 1963 would compel a different construction of the uninsured vehicle clause.

We have examined section 143a of the Code of 1963 and find nothing in its language which would require the construction urged by the plaintiffs. In addition, clause (4) of the Amendatory Act provides:

> "This amendatory Act of 1967 *shall not be construed to terminate or reduce any insurance coverage or any right of any party under this Act in effect prior to the effective date* of this amendatory Act of 1967." (Emphasis ours.)

This clause renders it clear that the legislature intended that the 1963 Act would be applicable under circumstances such as those in the case at bar.

Section 143a was enacted in 1963, and provided generally that no automobile liability policy shall be delivered or issued in this state with respect to any motor vehicle registered therein unless the policy contained coverage for uninsured and hit-and-run motor vehicles; provided, that any insured may elect in writing not to carry such coverage. This section, as adopted in 1963, did not define the term "uninsured motor vehicle."

In addition (and although not applicable) clause (2) of the 1967 Amendatory Act, partially defined the term "uninsured motor vehicle" as follows:

> "For the purpose of this coverage the term 'uninsured motor vehicle' includes, subject to the terms and conditions of such coverage, a motor vehicle where on, prior to or after the accident date the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified in the policy because of the entry by a court of competent jurisdiction of an order of rehabilitation or liquidation by reason of

insolvency on or after the accident date. An insurer's extension of coverage, as provided in this subparagraph, shall be applicable to all accidents occurring after the effective date of this Act during a policy period in which its insured's uninsured motor vehicle coverage is in effect. Nothing in this Section may be construed to prevent any insurer from extending coverage under terms and conditions more favorable to its insureds than is required hereunder."

This definition extended uninsured motorist protection to the insolvent insurance company situation, but it did not otherwise specifically extend coverage or define the term "uninsured motor vehicle." See: Dreher v. Aetna Casualty & Surety Co., 83 Ill App2d 141, 143, 226 NE2d 287 (1967). Thus, it is apparent that the legislature did not intend to extend the uninsured motor vehicle coverage beyond the extent specified in the foregoing clause of the Amendatory Act.

■ ■ Accordingly, we must continue to look to the insurance policy for the full meaning of the term "uninsured vehicle." We recognize that an insurance policy should be liberally construed, but this canon of construction does not authorize a distortion of language or the exercise of inventive powers for the creation of an ambiguity where none exists. Dreher v. Aetna Casualty & Surety Co., supra, 144; McCann for Use of Osterman v. Continental Cas. Co., 6 Ill App2d 527, 533, 128 NE2d 624 (1955).

■ ■ Parties to an insurance contract may incorporate such lawful provisions therein as they choose, and courts should construe and enforce the contract as made. Courts should not, under the cloak of construction, make a new contract for the parties. Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill 576, 590, 30 NE2d 66 (1940) ; Nationwide Ins. Co. v. Ervin, 87 Ill App2d 432, 435, 436, 231 NE2d 112 (1967).

■ ■ In the light of the policy definition of "uninsured vehicle"—as one where "there is no bodily injury liability bond or bodily injury liability insurance policy applicable at the time of the accident"—we find the policy to be plain, concise and unambiguous. It requires no construction. Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have employed, and if they are free from ambiguity, their terms are to be understood in their plain, ordinary and popular sense. Dempsey v. National Life & Accident Ins. Co., 404 Ill 423, 426, 88 NE2d 874 (1949) ; Pioneer Ins. Co. v. Alliance Ins. Co., supra, 586 ; Nationwide Ins. Co. v. Ervin, supra, 435, 436.

The plaintiffs also base their claim for relief on the underlined portion of the "Other Insurance" clause heretofore set forth, which is a part of Section II of the Country Mutual policy, which section is entitled, "Protection Against Bodily Injury by Uninsured Vehicles."

Their contention seems to be that this clause, which refers to "other insurance," is applicable when the tortfeasor, with whom the insured has an automobile accident, carries liability insurance. The pertinent portion of the clause makes specific reference to other insurance protecting an insured, in case of bodily injury while occupying or being struck by an uninsured vehicle, if such insured is a named insured under other similar insurance available to him. It is obvious, on its face, that this clause is not applicable to a situation where the alleged tort-feasor carries liability protection.

The plaintiffs have cited a number of decisions of Illinois courts and other jurisdictions, including those hereafter mentioned, which they contend are in support of their rationale in the case at bar.

Deterding v. State Farm Mut. Automobile Ins. Co., 78 Ill App2d 29, 222 NE2d 523 (1966) was a declaratory judgment suit wherein the plaintiff asked the court to de-

279

clare that the defendant's automobile liability policies issued to plaintiff's intestate upon an auto not involved in the accident, was applicable to an accident caused by an uninsured motorist. The defendant there contended that the uninsured motorist statute afforded protection to the plaintiff only up to the minimum statutory limits of $10,000 for bodily injury caused by uninsured motorists. The court held that the Illinois uninsured motorist statute does not prevent motorists from obtaining or companies from issuing, uninsured motorists protection in excess of the minimum requirements of the statute. In Deterding there was an uninsured motorist; in the case at bar, Toney was an insured operator who carried liability insurance within the minimum limits prescribed by the Financial Responsibility Law.

In Taylor v. Preferred Risk Mut. Ins. Co., 225 Cal App2d 80, 37 Cal Rptr 63 (1964), the defendant company issued a liability policy to the plaintiff's husband with limits of $10,000 for an injury to one person. The plaintiff had a collision with a Texas car on a California highway, and this car was insured only to the extent of $5,000 for bodily injury to one person. The plaintiff filed a declaratory judgment asking the court to declare the uninsured motorist coverage of her husband's policy to be applicable. Such judgment was entered and the defendant appealed. The California statute in effect required coverage limits of at least $10,000 for injury to one person, but defined an "uninsured motor vehicle" as one to which there is no bodily injury liability insurance applicable at the time of the accident. The reviewing court found the provisions in conflict, and construed them to define "an uninsured motor vehicle" as one carrying insurance in limits less than the requirements of the Financial Responsibility Law. The judgment of the trial court was affirmed.

Of all the cases cited by the plaintiffs in the case at bar, Taylor offers the strongest support for their con-

tentions, but even it falls short of the construction urged by the plaintiffs.

In Travelers Indemnity Co. v. Wells, 209 F Supp 784 (1962), John Stahl, the alleged tort-feasor, was uninsured; and in Mangus v. Doe, 203 Va 518, 125 SE2d 166 (1962), the appeals court held that the Virginia Code, which provided that a motor vehicle shall be deemed to be uninsured if the owner or operator thereof is unknown, is a part of every insurance contract; that the driver of the car which struck the Mangus car was unknown even though Mangus and said driver, at the time of the collision, got out of their cars to determine the nature and extent of the damage, if any, and talked with each other, but failed to take each others' name and address, in that neither party thought they were injured and no property was damaged; and that the insurer of Mangus was liable under such uninsured motor vehicle clause.

■ Other cases cited by the plaintiffs are also wide of the construction of the pertinent statute and the uninsured vehicle clause of the Country Mutual policy as espoused to this court by the plaintiffs. Under the particular facts of many of the cases cited by the plaintiffs, the familiar rule, that insurance policies should be liberally construed in favor of the insured and strictly against the insurer, is asserted. However, the cited cases do not support the plaintiffs' contention in the case at bar. While the rule is one well established in the law, it does not authorize us to disregard the plain, concise and unambiguous definition of "an uninsured vehicle" as set forth in Country Mutual's policy.

■ Before the uninsured vehicle provisions of the policy could become operative, the plaintiffs must prove that the tort-feasor (Toney) was in fact an uninsured motorist. Such was not the circumstance in fact, or under the provisions of the uninsured vehicle clause of the Country Mutual policy—which is unambiguous.

281

Consequently, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.